**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JUAN CARLOS GALVAN-MARCELO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. 1:21-cv-00884-TWP-MG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255, DENYING REQUEST FOR APPOINTMENT OF COUNSEL, AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Juan Carlos Galvan-Marcelo's ("Galvan-Marcelo") Motion to Vacate, Set Aside or Correct Sentence. (Dkt. 1.)  For the reasons explained in this Order, Galvan-Marcelo's motion for relief pursuant to 28 U.S.C. § 2255 must be **denied** and the action dismissed with prejudice.  His request for appointment of counsel, *id*. at 10,  is also **denied**.  Finally, the Court finds that a certificate of appealability should not issue**.**

## I.    REQUEST FOR COUNSEL

As an initial matter, the Court will address the request for counsel.  Galvan-Marcelo filed his § 2255 motion by using a form that asked him to respond to certain questions.  In responses to questions about the attorneys who had represented him at various stages of the proceedings, he indicated that he would like the Court to appoint an attorney to represent him to "take care of [his] appeal." *Id.* at 10.  Galvan-Marcelo is not pursuing a direct appeal, so counsel cannot be appointed to represent him for purposes of any such appeal.

To the extent that he is asking the Court to appoint counsel to represent him for purposes of his § 2255 motion, the authority for appointing counsel in an action seeking relief under § 2255

comes from the Criminal Justice Act, 18 U.S.C. § 3006A. *See* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28.").

First, the Court must determine whether the petitioner is financially eligible for the appointment of counsel.  To be financially eligible for the appointment of counsel, a petitioner does not have to be indigent; he must demonstrate only that he is financially unable to obtain counsel. *Gish v. Dittmann*, 291 F. Supp. 3d 864, 876 (W.D. Wis. 2017) (citing *United States v. Sarsoun*, 834 F.2d 1358, 1362 (7th Cir. 1987) ("The Criminal Justice Act ... merely requires that a defendant be financially unable to obtain counsel—a lower standard than indigency.")).  Galvan-Marcelo was previously found eligible for appointment of counsel in his criminal case. *See United States v. Galvan-Marcelo*, No. 1:20-cv-00025-TWP-MJD-1  ("Cr. Dkt."), Dkt. 10 (Order appointing CJA counsel). Based on this past appointment, the Court concludes that Galvan-Marcelo is financially eligible for the appointment of counsel.

Next, the Court must determine whether the appointment of counsel would serve the interests of justice.  A petitioner pursuing federal habeas relief is entitled to counsel only when he is under a death sentence, *see* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott,* 512 U.S. 849, 855 (1994), or when an evidentiary hearing is necessary to resolve the petition.  Rule 8(c) of the Rules Governing Section 2254 Cases.  In this case, Galvan-Marcelo is not under a death sentence, the § 2255 motion is fully briefed, and—for the reasons discussed below—no hearing is anticipated or necessary.  Therefore, whether to appoint counsel is purely a discretionary matter. *See Winsett v. Washington,* 130 F.3d 269, 281 (7th Cir. 1997); *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007). Thus, the Court must consider "if, given the difficulty of the case and the litigant's ability, [the

petitioner] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have had a reasonable chance of winning with a lawyer at his side." *Winsett,* 130 F.3d at 281.

In this case, the appointment of counsel is not necessary to serve the interests of justice. It does not appear that the difficulty of the case exceeds Galvan-Marcelo's ability to litigate his claims on his own. Galvan-Marcelo points to no particular circumstances that make it particularly difficult for him to litigate this case on his own beyond the normal challenges faced by all inmate litigants who may lack resources and legal training. The Court recognizes that Galvan-Marcelo's native language is Spanish, that he speaks and reads only a little English, and that he used an interpreter during the underlying criminal proceedings. *See, e.g.*, Cr. Dkt. 64 at 4-5. The Court also recognizes that Galvan-Marcelo's § 2255 motion appears to have been prepared by someone else. (Dkt. 1 at 12 (illegible signature above line for "Signature of Attorney (if any)").) But Galvan-Marcelo does not contend that he needs counsel because of a potential language barrier, and the contentions in the § 2255 motion are clear. They are also not legally complex—instead, they all reduce to claims about whether the Court relied on the correct elements when it accepted his guilty plea and convicted him. Moreover, they are all, for the reasons explained below, meritless. In these circumstances, it is not in the interest of justice to appoint counsel for Galvan-Marcelo. *See Wilson v. Duckworth*, 716 F.3d 415, 418 (7th Cir. 1983) (listing factors to consider when determining whether to appoint counsel under § 3006A, including whether the merits of the claim are colorable, and the complexity of the legal issues raised). Accordingly, the request for appointment of counsel is **denied**.

## II.   <u>THE § 2255 MOTION</u>

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence.  *See Davis v. United States*, 417 U.S. 333, 343 (1974).  A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice."  *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## III.   <u>FACTUAL BACKGROUND</u>

Galvan-Marcelo was charged by Indictment with: Count One: possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); Count Two: unlawful alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5); and Count Three: illegal reentry of a removed alien, in violation of 8 U.S.C. § 1326(a).  (Cr. Dkt. 11.)  At his change of plea and sentencing hearing, Galvan-Marcelo admitted that the following factual basis was true:

Galvan-Marcelo is a citizen of Mexico by birth.  (Cr. Dkt. 64 at 17.)  In November 2012, he was removed from the United States in Texas after being found in the country illegally.  *Id.*  In December 2019, the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco, Firearms and Explosives were surveilling Galvan-Marcelo and his co-defendant in Columbus,

Indiana. *Id.* They observed him and his co-defendant exit a Mazda and enter a trailer. *Id.* Galvan-Marcelo entered the trailer empty-handed but exited carrying a brown paper bag. *Id.* He and his co-defendant got back into the Mazda. *Id.* Shortly afterwards, Columbus Police Department officers stopped the Mazda for a traffic violation. *Id.* The driver was identified as Galvan-Marcelo, and the passenger was identified as his co-defendant. *Id.* A certified narcotics canine positively alerted to the presence of narcotics coming from inside the Mazda. *Id.* at 17-18. Officers noticed a small white crystal rock on the driver's seat of the Mazda. *Id.* at 18. A fast-food paper bag was sitting on the front passenger seat floorboard. *Id.* A subsequent search of the paper bag revealed two bags containing approximately 224 grams of actual methamphetamine. *Id.*

After the traffic stop, officers obtained a search warrant for the trailer. *Id.* They found a scale with methamphetamine residue, baggies, a small bag of methamphetamine, a 9mm handgun, magazines, ammunition, approximately $1,002.00 in cash, and documents in Galvan-Marcelo's name. *Id.* The handgun was not manufactured in Indiana. *Id.* At 19.

In a post-arrest interview, Galvan-Marcelo admitted to buying the firearm found in the trailer approximately two weeks before. *Id.* He consented to a search of his cell phone and acknowledged sending text messages arranging for a half-pound sale of methamphetamine. *Id.* The phone contained pictures of Galvan-Marcelo with firearms. He also admitted that a coconspirator had travelled with him 5 or 6 times in the past to deliver drugs.

Galvan-Marcelo has made no claim to U.S. citizenship or permanent residency, and he has not provided any valid immigration documentation. *Id.* Official Records indicated the defendant is a citizen of Mexico and has not obtained permission to reapply for admission to the United States. He was present in the United States illegally and knew of such status. *Id.*

Galvan-Marcelo filed a petition to enter a plea of guilty without a plea agreement.  (Cr. Dkt. 33.)  In the petition, he stated that he had read the Indictment and discussed it with his attorney and that he understood the charges against him.  *Id.*  He stated that he understood the maximum and minimum penalties applicable to Counts One, Two, and Three and that he understood that he could be deported if he was not a citizen of the United States.  A combined change of plea and sentencing hearing was held on July 23, 2020.  (Cr. Dkt. 64.) A Spanish interpreter was present and available to the parties.  *Id.* at 2.  Galvan-Marcelo acknowledged that Spanish was his native language but that he understood a little English.  *Id.* at 4.  His counsel advised the Court that a Spanish interpreter was always present when he met with Galvan-Marcelo.  *Id.* at 5.

At the hearing, Galvan-Marcelo reported that he had read the Indictment, fully discussed the charges and his case with his counsel and understood the penalty ranges for the offenses.  *Id.* at 5-6.  He acknowledged that he had sufficient time to talk with his counsel about the Government's evidence against him and possible defenses before he decided to plead guilty.  *Id.* at 7-8.  He acknowledged that he was fully satisfied with counsel's representation and advice.  *Id.* at 8.  He agreed that he was pleading guilty of his own free will because he was in fact guilty.  *Id.*

The Court reviewed the elements of Counts One, Two, and Three.  *Id.* at 11-14.  As to each count, Galvan-Marcelo acknowledged his understanding of the elements.  *Id.*  As to Count 2— being an unlawful alien in possession of a firearm—Galvan-Marcelo admitted that he knew he was in the United States illegally.  *Id.* at 13.  The Court advised Galvan-Marcelo of his right to appeal and the time for doing so.  *Id.* at 16.

The Government then established the factual basis would prove these facts beyond a reasonable doubt if the case went to trial, as set forth in Section III(A), *supra*. *Id.* at 17-19.  Galvan-Marcelo admitted that the factual basis was correct and true.  *Id.* at 19-20.  Accordingly, the Court

6

found that a factual basis existed for the plea of guilty, an independent record for the factual basis had been made, and the factual basis contained each of the essential elements of the three counts to which Galvan-Marcelo was pleading guilty. *Id.* at 20. Galvan-Marcelo pled guilty to all three charges. *Id.* at 21.

The Court accepted the guilty plea, finding that Galvan-Marcelo was fully competent and capable of entering an informed plea and aware of the nature of the charges and the consequences of the plea. *Id.* at 21. The Court found that his plea was knowing and voluntary and supported by an independent basis in fact that contained each element of the three offenses. *Id.* at 21.

The total offense level was 29 and Galvan-Marcelo was in criminal history category I, the advisory guideline sentencing range was 87-108 months imprisonment. The Court sentenced Galvan-Marcelo to the minimum advisory guideline sentence--an aggregate sentence of 87 months in prison--representing a term of 87 months on each of Counts One and Two and 24 months on Count Three, all to be served concurrently. (Dkt. 51.) The Court also sentenced Galvan-Marcelo to four years of supervised release. *Id.* He did not appeal his conviction or sentence.

## IV. DISCUSSION

In his § 2255 motion, Galvan-Marcelo sets forth multiple complaints about his underlying criminal action: (1) his counsel misinformed him as to the elements of the crimes he was charged with; as a result, he could not timely appeal;[1] (2) he should only have been convicted of simple

---

[1] In response to questions about why he failed to file an appeal or raise certain issues on appeal, Galvan-Marcelo repeatedly states in his § 2255 motion that he did not pursue an appeal because his counsel was ineffective and misinformed him as to the elements of Counts One, Two, and Three, which meant that Galvan-Marcelo did not realize there was a basis for appeal. *See, e.g.*, Dkt. 1 at 3 (responding to a question about why no appeal was filed, "Ineffective assistance of counsel. I was misinformed of the elements of the offense and I didn't know what to do."), 7 (responding to a question about why an issue was not raised on appeal, "Ineffective assistance of counsel and I was misinformed of the element of the offense. I had no idea of what to put in my appeal until now."). Nowhere does Galvan-Marcelo state that he directed his counsel to file an appeal. Thus, the Court does not understand Galvan-Marcelo to be contending that his counsel was ineffective for failing to file a notice of appeal, but rather that his counsel was ineffective for failing to adequately advise him, one result of which was that Galvan-Marcelo did not pursue an appeal.

possession of methamphetamine, not possession with intent to distribute; (3) he should not have been convicted of being an unlawful alien in possession of a firearm because he did not have the firearm with him when he was arrested; instead, it was found in his house; (4) he should not have been convicted of being an unlawful alien in possession of a firearm because the Second Amendment protects his right to bear arms; and (5) he should not have been convicted of illegal reentry of a removed alien and instead should only have been convicted of being an alien found in the United States.  All of these claims are meritless.[2]

## A.     Ineffective Assistance

Galvan-Marcelo argues that his counsel misinformed him about the elements of the crimes to which he pled guilty, which the Court understands as a claim that his counsel was ineffective. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021).

Galvan-Marcelo's argument on this point is wholly conclusory.  He does not explain how counsel allegedly "misinformed" him about the elements of the crimes to which he pled guilty, making it impossible for the Court to evaluate whether counsel was ineffective.  As the United States argues in its response, "[i]t is not the obligation of the court to research and construct the legal arguments open to parties . . . ," *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation omitted), and perfunctory arguments such as this one are waived, *M.G. Skinner*

---

[2] The United States argues that all but the ineffective assistance of counsel claim are procedurally defaulted. Because Galvan-Marcelo essentially complains that he was actually innocent of the crimes of which he was convicted and that he did not appeal because his attorney misinformed him as to the elements of the crimes of which he was convicted, analysis of the procedural default issue overlaps with analysis of the merits of his claims and the Court proceeds straight to that analysis.

& *Associates Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.")

But even if Galvan-Marcelo had established that his counsel was ineffective by misinforming him as to the elements of the crimes to which he pled guilty, he cannot establish prejudice because the Court correctly instructed him as to those elements, *see United States v. Fazio*, 795 F.3d 421, 427-29 (3d Cir. 2015) (no prejudice where counsel failed to advise non-citizen defendant that guilty plea carried risk of deportation because court colloquy cured the error), and, regardless, Galvan-Marcelo does not contend that, but for counsel's errors, he would not have pled guilty and insisted on proceeding to trial, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("In the context of guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ). To the extent that Galvan-Marcelo contends that his counsel and the Court misinformed him as to the elements of the crimes to which he pled guilty because he was not instructed in a manner consistent with his understanding of the law as expressed elsewhere in his § 2255 motion, as explained below, his understanding of the law is incorrect.

**B.**     <u>**Possession with Intent to Distribute**</u>

Galvan-Marcelo contends that he should not have been convicted of Count One—possession with intent to distribute 50 grams or more of methamphetamine—because he did not distribute the methamphetamine and instead just possessed it.[3] Thus, he contends, he should only have been convicted of simple possession.

---

[3] To the extent that Galvan-Marcelo contends that there was no factual basis to support his guilty plea to Count One because the firearm was found in his house and not the car in which he was arrested, meaning that never used the

But a conviction under § 841(a)(1) does not require that Galvan-Marcelo have *actually* distributed methamphetamine.  It requires only that he possessed methamphetamine with the *intent* to distribute it, as he was instructed at the change of plea and sentencing hearing. *See*  21 U.S.C. § 841(a)(1) ("it shall be unlawful for any person to knowingly or intentionally . . . possess with intent to . . . distribute . . . a controlled substance); *see also* Cr. Dkt. 64 at 11.

To the extent that Galvan-Marcelo is now contending that he did not intend to distribute the methamphetamine he possessed, he admitted under oath at the change of plea and sentencing hearing that he had arranged for a half-pound sale of methamphetamine and that law enforcement found a scale with methamphetamine residue, baggies, a handgun, and methamphetamine in his trailer, all of which is sufficient to establish a factual basis for the intent-to-distribute element.  *See, e.g.*, *United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir. 1990) ("Intent to distribute has been inferred in cases where small amounts of drugs have been packaged in a manner consistent with distribution or have been possessed in conjunction with other indicia of drug distribution, such as a weapon." (citing cases)).  His current conclusory contention that he did not intend to distribute the methamphetamine he possessed "is belied by his own statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) ("[R]epresentations made to a court during a plea colloquy are presumed to be true.") (citation and internal quotation marks omitted); *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007) ("Defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason

---

firearm to defend the drugs, his claim is meritless. *See, e.g.*, Dkt. 1 at 7 ("I was not captured possessing the firearm. The firearm was found in my house and it was not used to defend the drugs . . . I didn't use the firearm, I never threatened use of physical force against the person. Therefore the § 924(c) . . . conviction must be vacated."). The arguments he makes on this point incorrectly assume that he was convicted of violating 18 U.S.C. § 924(c)—a statute that imposes enhanced penalties for defendants who use firearms while committing certain crimes. He was not, however, convicted of violating that statute. He was convicted of possessing methamphetamine with the intent to distribute it, and, as explained, there was a sufficient factual basis to support his guilty plea to that charge.

for the disparity."), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008).  His

statements to the Court are given a "strong presumption of verity," *United States v. Silva*, 122 F.3d

412, 415 (7th Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), because "when

the judge credits the defendant's statements in open court, the game is over," *United States v.*

*Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).  "[A] defendant has no chance of success on appeal

when the judge elects to treat freely given sworn statements as conclusive.  Entry of a plea is not

some empty ceremony, and statements made to a federal judge in open court are not trifles that

defendants may elect to disregard."  *Id*.

Here, Galvan-Marcelo offers no reason for the disparity between his sworn statements at

the change of plea and sentencing hearing, let alone a compelling one.  Accordingly, this claim of

error fails.

**C.   Possession of Firearm by Illegal Alien**

Galvan-Marcelo next contends that he should not have been convicted of Count Two—

being an unlawful alien in possession of a firearm—because the firearm was found at his house,

not the car where he was arrested.

As set forth at the change of plea and sentencing hearing, the elements of this offense are

that: (1) the defendant possessed a firearm; (2) when he possessed the firearm, he was an alien

illegally or unlawfully in the United States; (3) he knew he was an alien illegally or unlawfully in

the United States; and (4) the firearm traveled in interstate commerce. 18 U.S.C. § 922(g) (eff.

Dec. 4, 2015, to June 24, 2022); Cr. Dkt. 64 at 11-13; *see also Rehaif v. United States*, 139 S. Ct.

2191 (2019) (§ 922(g) requires that the individual knows not only that he possessed a firearm but

also that he had relevant status when he possessed the firearm).  Galvan-Marcelo seeks to challenge

only the factual basis as to the first element—that he possessed a firearm—based on the fact that

the firearm was at his house at the time of his arrest, not with him in his car.  But the fact that Galvan-Marcelo did not have the firearm with him when he was arrested does not mean that he did not "possess" it.  The firearm was found at his residence, and he admitted that he had recently purchased it.  That is enough to establish that he "possessed" it.[4]  *See United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003) (stating, in the context of a charge of being a felon in possession of a firearm, "possession may be either actual or constructive" and "[a]ctual possession exists when a tangible object is in the immediate possession *or control* of the party" (emphasis added)).

Accordingly, this claim of error fails.

## D.     Second Amendment

Galvan-Marcelo also contends that he should not have been convicted of being an unlawful alien in possession of a firearm because the Second Amendment guarantees his right to bear arms. This argument is perfunctory and devoid of any citation to authority. Therefore, it is waived. Regardless, the argument is meritless. Galvan-Marcelo's statute of conviction—18 U.S.C. § 922(g)(5)—does not violate the Second Amendment.  *United States v. Meza-Rodriguez*, 798 F.3d 664, 673 (7th Cir. 2015); *see also United States v. Jimenez-Shilon*, 34 F.4th 1042, 1050 (11th Cir. 2022) (holding that § 922(g)(5) does not violate the Second Amendment and collecting cases from seven other circuits holding the same).

## E.     Count Three: Illegal Reentry

---

[4] To the extent that Galvan-Marcelo contends that there was no factual basis to support his guilty plea to Count Two because never used the firearm to defend the drugs, his claim is meritless. *See, e.g.*, Dkt. 1 at 7 ("I was not captured possessing the firearm. The firearm was found in my house and it was not used to defend the drugs. The proven fact was the time of my arrest that does show that I was not using the firearm because the firearm was found a later after I was arrested." (errors in original)). The arguments he makes on this point incorrectly assume that he was convicted of violating 18 U.S.C. § 924(c)—a statute that imposes enhanced penalties for defendants who use firearms while committing certain crimes. He was not, however, convicted of violating that statute. He was convicted of being an illegal alien in possession of a firearm, and, as explained, there was a sufficient factual basis to support his guilty plea to that charge.

Galvan-Marcelo contends that he should not have been convicted of Count Three—illegal reentry of a removed alien—because the Government did not prove that he illegally entered the United States. Instead, he argues, the proper charge should have been for being an alien found in the United States after removal.

This argument fails for several reasons. First, Galvan-Marcelo pled guilty, so the United States was not required to *prove* anything. Instead, for his plea to be valid, the record needed to include a sufficient factual basis to establish that he illegally entered the United States after being removed. Galvan-Marcelo does not dispute that the record contained such a sufficient factual basis, nor could he, given that he admitted that he was not a United States citizen, had previously been removed from the United States, and then was later found in Indiana without authorization.

Second, Galvan-Marcelo seems to be drawing a distinction between illegally "entering" the United States after removal and simply being "found" in the country after removal, but he fails to explain the import of this distinction. The statute imposes the same penalties for both. 8 U.S.C. § 1326(a) (setting zero-to-two-year range of imprisonment for "any alien who has been . . . removed . . . or has departed the United States while under an order of . . . removal is outstanding, and thereafter ***enters***, attempts to enter, or ***is at any time found in***, the United States").

Finally, in his motion, Galvan-Marcelo states that he should have received a 24-month sentence for this count but that "without a real deportation from an INS judge," the sentence should be zero-to-6 months, (Dkt. 1 at 8), an apparent reference to § 1325(a), which provides a sentence of zero-to-6 months for a first-time offense of an alien improperly entering the United States. But § 1326(a) does not require that a defendant have been deported for its terms to apply. Instead, it applies to any alien who has been "denied admission, excluded, deported, ***or removed***" from the United States (emphasis added). And Galvan-Marcelo admitted at his change-of-plea and

sentencing hearing that he had previously been removed from the United States.  He is not currently contending that he was not removed from the United States before he was found here in 2019, nor could he, given his admission at the change of plea and sentencing hearing.

If Galvan-Marcelo had raised this ground on appeal, it would have certainly failed.  Thus, he cannot show that he was prejudiced by the failure to raise the issue, and this claim is procedurally defaulted.  Accordingly, this claim of error fails.

**F.**     **Knowing and Voluntary Plea**

To the extent that Galvan-Marcelo's § 2255 motion can be read to contend that his plea was not knowing and voluntary because his counsel, the Court, or both misinformed him as to the elements of the crimes to which he pled guilty, the claim is meritless.  As discussed above, the only potential errors he has identified in terms of the information provided to him before his plea rest on an incorrect understanding of the law.

## V.  **CONCLUSION**

For the reasons explained in this Order, Galvan-Marcelo is not entitled to relief on his § 2255 motion.  Accordingly, his request for counsel is **DENIED**, his motion for relief pursuant to § 2255 is **DENIED,** and this **action is dismissed with prejudice**.  Judgment consistent with this Entry shall now issue and the Clerk shall **docket a copy of this Order in No. 1:20-cr-00025-TWP-MJD.**  The motion to vacate (Crim. Dkt. 63) shall also be **terminated** in the underlying criminal action.

The **Clerk is directed** to update Galvan-Marcelo's address on the docket consistent with the Distribution List below.

## VI.  DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability.  *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Galvan-Marcelo has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).   The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED.**

Date:  5/9/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Juan Carlos Galvan-Marcelo, #17380-028
THOMSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. Box 1002
Thomson, Illinois  61285

Bob Wood
UNITED STATES ATTORNEY'S OFFICE
10 West Market Street, Suite 2100
Indianapolis, Indiana  46204-3048

15